CAULDWELL-WINGATE COMPANY and Others, Claimants, *v.* THE
STATE OF NEW YORK, Defendant.
(Claim No. 21953.)

Court of Claims, October 5, 1935.

*Benjamin McClung* [*Charles B. Sullivan* of counsel], for the claimants.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell* and *Joseph I. Butler, Assistant Attorneys-General,* of counsel], for the defendant.

RYAN, J. The claimant Cauldwell-Wingate Company entered into a contract with the State of New York, dated March 1, 1928. The contract provided for the construction of the State office building on the site bounded by Center, Worth, Baxter and Leonard streets in New York city. The contract contained certain provisions which are important to our consideration and to which, for convenience, we shall assign a letter in quoting them as follows:

"A. Information for Bidders, page 1, paragraph 8. Visit to site: Proposals will be held as having been made with full knowledge of conditions and requirements. The Contractor will be held to have visited the premises, prior to the time of submitting his proposal, and to have appraised the conditions under which the work of this contract is to be executed.

"B. General Description, page 3, paragraph 3. Work not included: The work of this contract is contingent upon the execution of the foregoing work by the Foundation Contractor and shall follow said work in orderly sequence. This Contractor shall so execute his work as to avoid interference with, or delay of, other contracts.

" C. Addenda No. 3, paragraph 6. Time of Completion of Foundation Work. The time of completion specified for the foundation work is July 1, 1928.

" D. Article 23, page 8, changes in the work. Changes and extension of time: The State without invalidating the contract, may make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly.

" E. Article 33, page 11, delays. Extension of time: If the Contractor be delayed in the completion of the work by any act or neglect of the State, or by changes ordered in the work, or by any cause which the Architect shall deem to justify the delay as being beyond the Contractor's control, then the time of completion shall be extended for such reasonable time as the Architect may decide.

" F. Article 36, page 12, damages. Damages for delays: No charges or claim for damages shall be made by the Contractor, under the provisions of this Article, for any delays or hindrance, from any cause whatsoever, during the progress of any portion of the work

embraced in this contract. Such delays or hindrances shall be compensated for under the provisions of Article 33.

" G. Article 40, subcontracts, page 14. Contractual relations: Nothing contained in the contract documents shall create any contractual relations between any subcontractor and the State.

" H. Agreement: The work to be commenced promptly * * * and to be fully completed on or before March 31, 1929."

Several orders on contract authorizing additions and deductions were issued during the progress of the work. As to these there is no controversy with the exception of Force Order No. 42, to which we shall give consideration later.

The time for completion of the contract was extended to November 10, 1929 (Letter March 14, 1929) and was again extended to December 20, 1929 (Letter November 18, 1929, Exhibit 20). The work was finally completed on or about the latter date. Final estimate was issued and final payment was accepted by Cauldwell-Wingate Company on January 20, 1930, with reservation of the right to file claim for damages.

Shortly after the execution of the contract Cauldwell-Wingate Company submitted to the State its proposed progress schedule (Exhibit 9) which was returned by the chief engineer with letter dated April 26, 1928, which read as follows: " This schedule is approved with the understanding that the work of your contract is contingent upon the execution of the foundation work now being performed under separate contract, all as noted in your Specification #5014." (Exhibit 20.)

To this Cauldwell-Wingate Company replied by letter dated May 7, 1928: " We acknowledge receipt of your letter of April 26th returning one copy of our progress schedule in connection with the erection of the superstructure of the State Office Building, New York city, which schedule is approved tentatively contingent upon the execution of the foundation work, which was awarded under separate contract.

" We are proceeding with our work as called for under our contract, and in accordance with Addenda #3 to the specifications, and will be ready to begin erection of steel on July 1st, 1928.

" If at any time it can be determined with reasonable accuracy the completion of the foundation contract will be delayed and the terms of such delay, it is most important that we be notified that we may prevent a large accumulation of fabricated material and the consequent expense of handling, storage, etc." (Exhibit 20.)

Under date of May 10, 1928, the chief engineer advised Cauldwell-Wingate Company: " there has been some delay in the Foundation Work, due to conditions as encountered at the site," and under

date of May 18, 1928, the chief engineer advised Cauldwell-Wingate Company as follows: " This is to advise that the time of completion of J. L. McDonald's contract for Construction of Foundations, State Office Building, New York City. has been extended from July 1st to August 20th, 1928.

" Your contract provides that the progress of your work is contingent upon the completion of this foundation contract. You should be governed accordingly." (Exhibit 20.)

In the meantime the foundation contractor, McDonald, whose work was to be completed on or before July 1, 1928 (Exhibit 22), had entered upon his work. Before bidding McDonald had examined the site of the proposed work and found it " to be covered with cinders at an elevation of about two feet above the curb level except where it was occupied by two brick buildings, one a two-story building and one a one-story building." Likewise before bidding, McDonald had examined the plans and specifications for his work and found that they provided that contractor " should remove existing structures from the premises including buildings, fences, piles, masonry and other existing work within the limits of the area bounded by the curb lines of the streets bounding the site." The plans furnished McDonald by the State included a cross section and showed " the elevation and artificial structures to be removed and only represented thereon the aforesaid two buildings."

When McDonald began work with his steam shovel " it was immediately disclosed upon excavation that beneath said two feet of cinders were foundation walls and masonry footings of about thirty houses, apartments and office buildings superimposed on wooden piles from fifteen to twenty feet in length which structures had formerly occupied said entire block and a portion of which had been erected in former days over a pond which once had water to a depth of about fifty feet, and these old foundation walls had been covered with said cinder fill." McDonald was then directed by the State Department of Public Works " to make thirty-seven composite borings over the entire site which borings were made to varying depths including one boring to the depth of one hundred twenty-seven feet." These borings " disclosed the existence of said old foundation and the existence of said pond " and thereupon the specifications in McDonald's contract " were changed and altered to require the removal of the old foundations " which required blasting and other difficult and expensive work resulting in McDonald's being required " to work nearly one year in excavating * * * when said excavation should have been performed, had the site complied with the surface condition, in about three weeks time."

Moreover, the precast concrete piles specified in McDonald's contract were abandoned and composite piles of wood and concrete substituted.

The foregoing recital of conditions relating to the foundation contract is quoted from the decision of this court in the claim of *McDonald* v. *State of New York, Claim No. 19460* (dated May 18, 1932, unreported), an exhibit herein. (Exhibit 21.) Upon this decision award and judgment in favor of McDonald and against the State of New York were entered. An appeal taken was not perfected and this decision was never reviewed. It stands, therefore, as an adjudication of the facts regarding the site and delivery thereof to the claimant herein, Cauldwell-Wingate Company.

We now quote two additional findings from the decision of this court in said McDonald claim·

" 13. That said borings disclosed the existence of said old foundation and the existence of said pond and the records as to the structures heretofore occupying said site were easily available among the records of the Building Department of the City of New York and all of said information could have been ascertained by an investigation and examination of said records together with the results of said test borings.

" 14. That the existence of said previous structures and the existence of said pond and the sub-soil conditions of said site were matters of common knowledge in and about the City of New York."

As McDonald's contract contained identical provisions as to visit to site, changes in the work, delays and damages quoted hereinabove under the letters A, D, E and F, it is doubtful if upon the findings of fact 13 and 14 above quoted this court would have reached the conclusion that the State was liable had it at that time had the benefit of two decisions of the higher courts which subsequently appeared. We refer to *Wright & Kremers, Inc.*, v. *State* (238 App. Div. 260; affd., 263 N. Y. 615) and *Weston* v. *State* (262 id. 46). The opinion of Mr. Justice TAYLOR in the *Wright & Kremers Case* (*supra*) quotes two contract clauses almost identical in language with " delays " and " damages," quoted above under letters E and F, and then concisely defines and summarizes those delays which notwithstanding said contract provisions entitle a contractor to recover from his employer. The leading authorities on this subject are cited.

No opinion was written by this court in the *Wright & Kremers* case. We have, therefore, for the purposes of this determination re-examined the findings of fact therein. We deem it of advantage at this time to refer briefly to them and to point out the nature of the delays found by this court on which we based an award to

Wright & Kremers which was disallowed by the higher courts. The Wright & Kremers contract provided for the construction of a shop building on the site of Auburn State Prison. A prison wall extended across one end of the site and there existed besides an isolation cell house, a boiler house, an incinerator, concrete basement walls which had been previously constructed but never used, and a coal pile. The principal obstruction was the boiler house which was located wholly within the area where the shop building was to be constructed. This was used by the State to furnish steam to part of its institution until December 29, 1928, although the excavating subcontractor was on the job ready to go to work October 1, 1928, and did begin excavating October 23, 1928, working as he could in and about the location. In addition the contractor struck a sewer which was connected with the prison sewer system and was in use and which flooded the area with water. This item, disallowed by the Appellate Division, was reinstated by the Court of Appeals and it might be argued that such action by the highest court was conclusive and binding herein. Therefore, it should be noted that the Auburn Prison site was entirely under the control of the State, and moreover that the claimant, Wright & Kremers, Inc., was given notice on October 3, 1928, that it was authorized to begin work. The situation in the instant case is not at all analogous.

The other items allowed by this court and disallowed by the Appellate Division, Fourth Department, and not reinstated by the Court of Appeals were respectively:

1. Damages for delay from October, 1928, to January, 1929, in the revision of plans, drawings and specifications for pier columns and wall footings and from January, 1929, to May, 1929, in making changes in plans, drawings and specification for floor heights of the basement and of the first floor and floor thickness and other items in the basement and first floor walls.

2. Delays until December, 1929, in specifying hardware for certain doors and in failing to specify other items of interior finish in the buildings.

3. Increased cost of labor and compensation insurance on account of the delays specified in 1 and 2.

We make the foregoing review of the *Wright & Kremers* decision for the reason that we have applied to the record in this case the tests so tersely stated by Mr. Justice TAYLOR. To adopt his language: " Since it appears that none of the delays caused by the State was unrelated to the contract or not within the contemplation of the parties * * *; that none was caused by direct interference on the part of the State * * *; and that none of the

delays was so great or unreasonable that it might fairly be deemed to indicate an abandonment of the contract * * *, the claimant is concluded by the portions of the contract referred to."

The provision, " The time of completion specified for the foundation work is July 1, 1928," must be read in conjunction with the provision, " The work of this contract is contingent upon the execution of the foregoing work by the Foundation Contractor and shall follow said work in orderly sequence." Claimant Cauldwell-Wingate Company knew or should have known and understood that the foundation work might be delayed and that its only relief therefor was an extension of time. It had the same opportunity as the State to make investigations. Moreover, the existence of the previous structures and of the pond and the subsoil conditions of the site were matters of public record and of common knowledge in the city of New York. Such sources of information were not available to the contractor in the *Weston* case wherein the Court of Appeals held the State free from liability. The paragraphs of the Weston contract quoted by Chief Judge POUND differ only in elaboration of phraseology from that entitled " visit to site " and quoted under A hereinabove. The meaning and intent is the same. We do not find in this record proof of that " deception, inequality or inequity " which will relieve Cauldwell-Wingate from the binding terms of its contract. (*Weston* v. *State, supra*.)

The decision in this case will inevitably be compared with our recent decision in the case of *Matter of Seglin Construction Co., Inc., Claim No. 22029* (unreported), filed under chapter 629 of the Laws of 1931. Seglin's contract was for the construction of the State office building in Albany and *included* the foundation. After the contractor had begun excavating it was ordered by the State to stop all work. It was held up until the revised plan for foundations could be devised, plotted and carried into execution. This was direct interference. Seglin was entitled to recover regardless of an enabling act.

The enabling act was similar to this one in that it authorized this court to hear, audit and determine the liability of Seglin to its subcontractors and of the State to Seglin. One of Seglin's subcontractors sued Seglin in the Supreme Court. It was there determined that through an error of the State of New York in the preparation of its plans and in the approval of certain shop drawings the subcontractor had been required to furnish materials for the building not contemplated by the contract. Judgment was rendered against Seglin accordingly. (*Hughes-Keenan Co., Inc.*, v. *Seglin Construction Co., Inc.*, 235 App. Div. 750; Id. 877.)

The claims of the remaining subcontractors against Seglin had not been adjudicated, however, and we passed upon the merits in each case, making awards in some and disallowing others. We held the act to be constitutional.

While the act may be of doubtful constitutionality in the light of attempting to award extra compensation, we believe that its procedural provisions are not void. We recognize that this court has no jurisdiction of suits between individuals. Under the Constitution such authority is vested in the Supreme Court alone. Moreover, there is no privity of contract between the State and the subcontractor in these cases. Nevertheless, if the Legislature, recognizing that the State through unreasonable delays and interferences may have damaged not only the general contractor but his subcontractors as well, authorizes the submission of such issues to the Court of Claims and the subcontractors avail themselves of this tribunal and submit to its jurisdiction, we believe such legislation should be upheld. A multiplicity of suits is avoided, the ultimate determination of the State's liability or lack of it is expedited, justice is furthered. It may be that the general contractor instead of resisting the claims of his subcontractor is in his corner aiding the attack upon the State. But is the State in any better position if the general contractor comes into this court and says: " Here are numerous judgments against me, each separately recovered with costs taxed and added to the verdict. In each of these it has been adjudicated that I have delayed and interfered with my subcontractor or have required him to furnish extra goods, work, labor and services beyond the stipulation of my contract with him. In each instance you, the State of New York, have breached your contract with me and I demand satisfaction." He presents his proof, the State defends, this court determines. Can the result be any different than that obtained by the simpler and more direct adjudication between all parties in one suit?

We must be mindful, however, that this enabling act is not to " be construed as passing upon the merits of the claims herein and no awards shall be made or judgments rendered unless sustained by such legal evidence as would establish a liability against an individual or corporation in a court of law or equity." (Laws of 1931, chap. 701.)

We fail to find wherein Cauldwell-Wingate Company is liable to its subcontractors. Each subcontractor was contingent upon the plans, specifications and general conditions of the general contract. (Exhibits 10–17.) The subcontractors are as much bound thereby as the general contractor.

Said Chief Judge HISCOCK in *Degnon Contracting Co.* v. *City of New York* ([1923] 235 N. Y. 481): "It would seem to be axiomatic that a suitor cannot recover damages for breach of a contract unless he has suffered them."

We believe this rule to be broad enough to mean that if it is established that the general contractor is legally liable to respond in damages to his subcontractor, then he may recover them, although he has not yet paid or satisfied such liability. Here, each subcontractor has appeared and asserted the indebtedness of Cauldwell-Wingate to him. But neither payment nor liability to pay have been established. The claims of all subcontractors must, therefore, be dismissed.

We come now to the consideration of Force Order No. 42. The contract required Cauldwell-Wingate Company "to furnish and erect overhead bridges in the streets adjacent to the building and extending the full length of the property on each street." This requirement was in accordance with an ordinance of the city of New York and was intended to provide protection to pedestrians and traffic in the streets. Also the top of the structure would be used for the storage of materials including granite. After 130 feet of the 1,250 feet of specified bridge had been erected, all in accordance with municipal requirements, claimant found that the bridge would not be of sufficient strength to carry the weight of some of the stones which had to be stored on top. After conference with representatives of the State, it was decided that the balance of the structure would not be erected. Instead a fence left by McDonald was moved out from the building line to the curb line and Cauldwell-Wingate Company planked over the entire space excluding pedestrians from walking along the side of the streets adjoining the building. This was done with permission of the city of New York.

The actual cost to claimant was in excess of the amount for which it had subcontracted the erection of the structure originally specified. Nevertheless when the final estimate was being prepared the State estimators arbitrarily computed an alleged credit to it for the amount of 1,120 feet of sidewalk bridge not built and deducted from claimant's contract price the sum of $3,426. Claimant accepted final payment under protest.

Claimant does not seek to recover the excess cost it incurred but only the amount which was arbitrarily deducted. We find no justification for such deduction and award claimant the amount deducted, with interest from the date of final estimate.

BARRETT, P. J., concurs.